IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORETTA WEEDEN,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF CHICAGO MEDICAL CENTER,<br><br>Defendant. | Case No. 17-cv-4230<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

In January 2011, Loretta Weeden was terminated from her job at that the University of Chicago Medical Center (UCMC) where she had worked for more than eleven years. Weeden alleges that UCMC discriminated against her based on her race, age, sex and disability when she was terminated. UCMC argues that it is entitled to judgment as a matter of law because Weeden cannot establish a *prima facie* case of discrimination or that her termination was pretextual based on any of her claims. For the reasons stated below, UCMC's motion for summary judgment [49] is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

1

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## FACTUAL BACKGROUND

Weeden began working at UCMC's Chicago Biomedicine Information Services (CBIS) as a Data Center Operator and later became Senior Data Center Operator. (Dkt. 77, ¶6).[1] Weeden is female, African-American, and was 62 years old at the time of her termination. (*Id.* ¶2). Between 2008 and 2011, she reported directly to Mark Benson and Steve Slowiak. (*Id.* ¶8). When Weeden was hired, UCMC provided her with a copy of its Pay Recording Policy, and Weeden's direct supervisor explained the

---

[1] The undisputed facts are taken from UCMC's Local Rule 56.1(a) reply statement in support of its motion for summary judgment [77], which incorporates Weeden's response to UCMC's undisputed material facts, Weeden's statement of material facts in opposition to UCMC's motion for summary judgment, and UCMC's response to Weeden's statement.

2

policy to her. (*Id.* ¶9). Weeden was aware of, had access to, and understood the terms of the policy throughout her employment with UCMC, and knew she was obligated to comply with the policy. (*Id.* ¶10). The Pay Recording Policy requires employees to record their hours through a Time & Attendance System. (*Id.* ¶11). The policy states, in relevant part, "[a]n employee paid on a bi-weekly basis must clock-in his/her own time at an approved location as designated by his/her manager. Clocking another employee's time or allowing someone to clock one's own time is not permitted, and will be grounds for immediate termination for a first offense." (*Id.* ¶12). Weeden understood that UCMC's Pay Recording Policy required her to clock in her own time, and that clocking other employees in or out or permitting other employees to clock her in and out, was a violation of the Pay Recording Policy that could result in immediate termination for a first offense. (*Id.* ¶15). No supervisory or managerial employee ever instructed Weeden that deviation from the Pay Recording Policy's requirement of recording one's own time was permissible, and no supervisor ever instructed her that employees were allowed to clock each other in or out. (*Id.* ¶16). Weeden was aware that with one exception not applicable here, employees clocking other employees out was improper. (*Id.* ¶17).

Before January 4, 2011, Weeden stated that at least five other coworkers clocked her in or out on at least nine occasions. (*Id.* ¶22).[2] She said that at least one employee

---

[2] The Court finds that the following relevant facts in UCMC's Local Rule 56.1 statement of material facts are deemed admitted because they are supported by citation to the record and Weeden's responses do not controvert UCMC's statements of fact and are unsupported by any citation to admissible evidence in the record: ¶¶ 16, 22, 23, 31, 40, 41, 45, 47, 65, 66, and 67.

3

had her Social Security number which he used "for years" to clock her in or out. (*Id.* ¶23). Before January 4, 2011, Weeden also clocked out at least one other employee. (*Id.* ¶24). On January 4, 2011, Plaintiff was scheduled to work from approximately 2:00 p.m. to 10:30 p.m. with her co-worker Bill Lindmark. (*Id.* ¶29). She left at approximately 7:30pm but did not clock out, told Mr. Lindmark she was going shopping and to do some errands, and returned to work at 10:30pm to clock out. (*Id.* ¶¶30–32). That day, Mr. Lindmark emailed Mark Benson and informed him that Weeden had left work to go shopping and did not return for more than two hours. (*Id.* ¶33). The next day, Mr. Slowiak began to investigate Weeden's time recording practices. (*Id.* ¶36).

On January 6, 2011, Weeden met with Mr. Slowiak and Sarah Austin, then UCMC Manager of Employee and Labor Relations. (*Id.* ¶38). At the meeting, Mr. Slowiak, Ms. Austin, and Weeden discussed the allegation that Weeden had clocked at least one other employee out and allowed another employee to clock her out. (*Id.* ¶39). Weeden admitted to Mr. Slowiak and Ms. Austin that she had violated the Pay Recording Policy. (*Id.* ¶40). Weeden admitted that she had clocked other employees out, and that other employees had clocked her out. (*Id.* ¶41). She did not tell Mr. Slowiak and Ms. Austin that she experienced a "flareup" or other debilitating condition that prevented her from returning to work on January 4, 2011. (*Id.* ¶45). Because of Weeden's admissions about her violations of the Pay Recording Policy, UCMC offered her the opportunity to resign in lieu of termination, which she

4

declined. (*Id*. ¶47). UCMC then terminated her for violating the Pay Recording Policy. (*Id*. ¶48).

The same month, Mr. Lindmark met with Anthony Rubino, Director of Technology and Infrastructure, and Ms. Austin to discuss Weeden's allegation that Mr. Lindmark had clocked her out in violation of the Pay Recording Policy. (*Id*. ¶50). During the meeting, Mr. Lindmark admitted that he previously clocked Weeden out from work and had also previously allowed her to clock him out from work. (*Id*. ¶51). Based on Mr. Lindmark's admitted violation of the Pay Recording Policy, UCMC offered Mr. Lindmark the opportunity to resign in lieu of termination, which Mr. Lindmark accepted. (*Id*. ¶52). Mr. Lindmark is a white non-disabled male, and he was 59 years old when he resigned. (*Id*. ¶53).

While still employed at UCMC, Weeden had regular conversations with her co-workers about when she might be retiring. (*Id*. ¶65). Mr. Slowiak asked Weeden three times in 2009 and 2010 when she intended to retire because he wanted to give her a party. (*Id*. ¶66). Weeden testified that she could not describe the bases of her disability claim, and that the condition she considered a disability in 2011 was her hip, for which she never requested an accommodation from UCMC. (*Id*. ¶67).

## ANALYSIS

### I.   Compliance with Local Rule 56.1

UCMC argues that Weeden's submissions do not comply with Local Rule 56.1 and her *pro se* status does not excuse her non-compliance. (Dkt. 77).[3] The Court has

---

[3] Because Weeden is proceeding *pro se*, UCMC served her with a "Notice to Pro Se Plaintiff Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. 53). This

5

discretion to require strict compliance with the local rules and "even pro se litigants must follow these rules." *Welcher-Butler v. Brennan*, 619 F. App'x 550, 550 (7th Cir. 2015) (citations omitted). *See also Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules.") (citations omitted).

Local Rule 56.1 requires, among other things, the party opposing summary judgment provide "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." The Court will not outright strike or disregard Weeden's Local Rule 56.1 responsive statement, however, as discussed in footnote 2, *supra*, the Court deems a number of UCMC's facts admitted because of Weeden's responses. As for her statement of material facts (Dkt. 68), Weeden did not fully comply with Local Rule 56.1. Under "Material Fact", she states that she served discovery about the alleged video evidence and recites UCMC's response, and otherwise lists as material facts her characterization of UCMC's arguments on summary judgment. In addition to not being compliant with Local Rule 56.1, Weeden's statements in response to summary judgment are not relevant and/or not supported by admissible evidence. While the Court liberally construes Weeden's pleadings and draws reasonable inferences from the evidence in her favor, the Court is not obligated "to scour the record looking for factual disputes."

---

notice explained how to respond to Weeden's summary judgment motion and Rule 56.1 Statement and cautioned Weeden that the court would assume she did not dispute UCMC's factual contentions if she failed to follow the procedures in Local Rule 56.1.

*Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (citations and quotations omitted); *Gogos v. AMS Mech. Sys.*, 678 F. App'x 411, 413 (7th Cir. 2017) (when a party opposing summary judgment does not cite to admissible evidence to deny asserted undisputed facts by the moving party, the facts are deemed admitted).

## II. Age Discrimination Claim

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. protects workers who are at least 40 years of age from age-based employment discrimination. The ADEA provides, in relevant part, that for individuals over forty-years old, it is unlawful for an employer "to discharge any individual...because of such individual's age." 29 U.S.C. § 623(a)(1). "To prevail on an age-discrimination claim, the plaintiff must prove that his age was the 'but-for' cause of the challenged job action…that, but for his age, the adverse action would not have occurred." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (internal citations and quotations omitted). At the summary judgment stage, the Court considers the evidence "as a whole" to determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "A court may review the evidence through the *McDonnell Douglas* burden-shifting framework; but ultimately, the court must conduct a cumulative review of the evidence to determine whether a reasonable factfinder could find that age was a but-for cause of the adverse employment action." *Crum v. Advocate N. Side Health*

*Network*, 2018 U.S. Dist. LEXIS 30141, at *18–19 (N.D. Ill. Feb. 26, 2018) (citation omitted), *aff'd,* 733 F. App'x 842 (7th Cir. 2018).

"[U]nder *McDonnell Douglas*, the plaintiff has the initial burden of establishing that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer. If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (internal citations and quotations omitted).

It is undisputed that Weeden is over forty years old and was subjected to an adverse employment action. As to the second *McDonnell Douglas* element, it is undisputed that Weeden violated the Pay Recording Policy. (Dkt. 77, ¶40). She argues, however, that other employees in CBIS also violated the policy and such conduct was condoned at CBIS, but she was singled out and was the only one terminated. This argument is not supported by admissible evidence. There is evidence of another employee violating the policy, but the evidence shows the consequence was the same for Weeden and her white male co-worker: a choice between resignation or termination. Further, even if Weeden provided admissible evidence that other employees also violated the policy, that does not demonstrate that

8

Weeden performed reasonably in accordance with UCMC's legitimate expectations. In *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010), the Seventh Circuit affirmed the grant of summary judgment to the defendant employer, explaining that plaintiff "must show that he was meeting [defendant's] expectations at the time of his termination, which includes evidence that he did not violate [defendant's] policies." Thus plaintiff's failure to rebut his employer's findings of his policy violations "is a failure to establish the second element of his prima facie case." *Id*. Here, Weeden has not provided any evidence that she did not violate UCMC's Pay Recording Policy and in fact admitted to violating the policy. Therefore she cannot establish the second element of a prima facie case.

As to the fourth *McDonnell Douglas* element, Weeden has not shown that similarly situated employees outside of her protected class were treated more favorably by UCMC. Weeden argues, again without citation to admissible evidence, that her younger male co-workers were engaged in the same behavior that violated the Pay Recording Policy and not terminated. UCMC submitted evidence that Weeden and Mr. Lindmark were the only employees who admitted to violating the Pay Recording Policy. (Dkt. 52-3, Exh. 3, Slowiak Decl.; Dkt. 52-4, Exh. 4, Rubino Decl.). Weeden did not rebut this evidence. *See Crum*, 2018 U.S. Dist. LEXIS 30141, at *22 ("Crum does not have personal knowledge of the investigations Advocate initiated into these employees' policy violations and why Advocate decided not to terminate each of those employees. In short, Crum's opinion is uninformed and it does not advance his argument here.").

Because Weeden has not met her burden to establish a prima facie case of discrimination, the burden does not shift to UCMC. But even if it did, UCMC gave a legitimate, nondiscriminatory reason for the adverse employment action. In its termination letter to Weeden, UCMC explained that she was terminated for "falsification of time and attendance records":

> Specifically, on January 4, 2011 you left work for an extended period of time without clocking out or alerting management of your absence. In addition, you acknowledged that on multiple occasions you have clocked coworkers out for their shift and in turn have allowed coworkers to clock you out for your shift. Such actions are grounds for immediate termination under HR Policy "Employee Termination" and "Pay Recording."

(Exh. C to Slowiak Decl.). Further, Weeden has not submitted evidence to raise a genuine issue of fact that UCMC's explanation for her termination was pretextual. "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge. [I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 724 (7th Cir. 2018) (internal citations and quotations omitted). Weeden contends that the reason UCMC disciplined Mr. Lindmark was to mask discrimination against her. But she does not offer admissible evidence to support this theory. Her speculation is not enough to show "such weaknesses, implausibilities, inconsistencies, or contradictions in [defendant's] asserted reason[s] that a reasonable person could find [them] unworthy of credence."

*Skiba*, 884 F.3d at 724 (internal citations and quotations omitted). At her deposition, she testified about Mr. Slowiak asking her a few times in 2009 and 2010 about when she planned to retire. These questions, to the extent she believes they show discrimination, would be "isolated comments [] not probative of discrimination" because she has not shown they were "contemporaneous with the discharge or causally related to the discharge decision-making process." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 605 (7th Cir. 2012) (citations and quotations omitted).

Considering the evidence as a whole, there is no genuine issue for trial because the evidence shows Weeden was terminated because she violated UCMC's Pay Recording Policy, and she has not provided any contrary evidence beyond speculation that she was fired because of her age. No reasonable trier of fact could find that Weeden's age was the but-for cause of her termination.

### III. Disability Discrimination Claim

Under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, certain types of disability discrimination are forbidden: "'No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (*quoting* 42 U.S.C. § 12112(a)).[4] "We have recognized that disability discrimination under the

---

[4] "The relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are 'materially identical.' … As a result, 'courts construe and apply them in a consistent manner,' and our evaluation of [plaintiff's] claims under both require the same analysis." *A.H.*, 881 F.3d at 592 (citations omitted).

11

Rehabilitation Act and the ADA can be established in three different ways: '(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.'" *A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592-93 (7th Cir. 2018) (citations omitted). Weeden's claim falls in the first category.[5]

To prove her claim, Weeden must show "(1) [s]he is disabled; (2) [s]he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by [her] disability." *Monroe v. Ind. DOT*, 871 F.3d 495, 503 (7th Cir. 2017). In addition, the court views the evidence "as a whole" to determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [disability] caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. UCMC argues that Weeden fails to create a genuine issue for trial that she was discriminated against because of her disability.

Weeden's claimed disability is her problem with her hip. "Disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102. Weeden has not offered any evidence of how her hip problem substantially limits one

---

[5] Weeden does not argue that any UCMC policy disproportionally impacts disabled people. She also does not argue that UCMC refused to provide her a reasonable modification and instead testified she never requested an accommodation from UCMC (Weeden Dep. 146:2-13.). (Although in response to UCMC's Rule 56.1 statement, she stated, without citation to evidence, that she used a walker at work and did not need to ask for any more accommodations). (Dkt. 77, ¶67).

or more of her major life activities or how she meets any of the other definitions of disability. Indeed Weeden does not argue that her problem with her hip limited her ability to work leading up to her termination. *See Fleishman*, 698 F.3d at 607 ("the existence of a medical condition alone is insufficient to satisfy the ADA… [plaintiff's] bare assertion that his aneurism constitutes a disability is insufficient").

Weeden argues that UCMC was "fully aware of her disability and hip issue through her FMLA papers that was filed and stored with [UCMC]" and because Mr. Slowiak had to pick her up from the floor one day because her hip flared up and she could not walk. (Dkt. 65 at 5). She does not provide evidence to support either of these contentions. And even if true, the fact that UCMC had her FMLA documentation or that Mr. Slowiak helped her into a wheelchair knowing she had a hip flare-up, does not show that her alleged disability substantially limited one or more major life activities or that her termination was caused by her disability. *See Garner v. Clearstaff, Inc.*, 2015 U.S. Dist. LEXIS 160487, at *23 (N.D. Ill. Dec. 1, 2015) ("plaintiff incorrectly relies solely on her doctor's FMLA certification…to establish her having a disability under the ADA.").

"To establish the third prong and survive summary judgment, a plaintiff must show a genuine issue of material fact exists regarding whether his disability was the 'but for' reason for the…termination." *Monroe*, 871 F.3d at 504. Weeden does not offer any evidence to create a genuine issue of fact that her disability was the "but for" cause of her termination. Instead the undisputed record shows that she was terminated for violating the UCMC's Pay Recording Policy. Considering the evidence

13

as a whole, no reasonable trier of fact could find that Weeden's alleged disability caused her termination.

## IV. Race and Sex Discrimination Claims

In a Title VII discrimination case, to survive summary judgment, "a plaintiff must present evidence [that] would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the adverse employment action." *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018) (citations and quotations omitted). Under *McDonnell Douglas*, a plaintiff must "furnish evidence that, among other things, he was meeting his employer's legitimate job expectations." *Ford v. Rockford Bd. of Educ.*, 781 F. App'x 554, 555 (7th Cir. 2019).

Weeden admitted that she violated the Pay Recording Policy. She contends that all of her co-workers were engaged in the same non-compliant behavior which was condoned at UCMC, but she was the only one terminated, and that Mr. Lindmark was essentially used as a cover-up to discriminate against her. As discussed, these arguments are unsupported by evidence and do not show that Weeden was meeting UCMC's legitimate job expectations to comply with its Pay Recording Policy. Furthermore, Weeden's white male non-disabled co-worker, Mr. Lindmark, had a "comparable set of failings" to Weeden (*see Ford*, 781 F. App'x at 556), and like her, was given the option of resignation or termination.[6]

---

[6] In her briefs, though she does not dispute that she was clocking in for other employees and them for her, Weeden argues that she was not violating UCMC policy because she was following an unwritten UCMC policy to tally and use her accrued time. She does not offer admissible evidence to support the existence of this unwritten policy, but in any event, this issue is not relevant to resolving the question of whether there is a genuine issue about whether she was discriminated against because of her age, gender, race or disability. *See*

14

In response to UCMC's summary judgment motion, Weeden provides an affidavit from her daughter, Mellissa Weeden. (Dkt. 69, Exh. 1). Mellissa's affidavit explains the history of her romantic relationship with one of her mother's co-workers, Mr. John Tincu, a white male. Mellissa also describes Mr. Tincu's tardiness issues at work and states that Mr. Slowiak wrote Mr. Tincu up for tardiness. She concludes: "[p]ersonally, I know that John Tincu was also stealing time" and "John Tincu is a white male. My mom is black." (*Id.* ¶¶32–33). Weeden relies on her daughter's affidavit to argue that although she was fired for allegedly violating the UCMC pay recording policy, UCMC "allowed other male coworkers who were white, [to] stay who also violated the pay recording policy simply because they were not caught." (Dkt. 66). Melissa's affidavit does not state that Mr. Tincu and other employees clocked each other in and out, which Weeden admitted to doing. Even assuming arguendo that Melissa's affidavit showed that Mr. Tincu violated the Pay Recording Policy, there is no admissible evidence that UCMC knew Mr. Tincu was violating the policy and treated him more favorably than Weeden. Further, Weeden's reliance on this affidavit to argue that her white male colleagues were not disciplined for also violating UCMC policy, does not help her meet her burden to show she met UCMC's legitimate job expectations. Thus even reading Mellissa's affidavit in the light most favorable to Weeden, it does not establish a prima facie case of race or gender discrimination.

---

*Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) ("not all factual disputes will preclude the entry of summary judgment, only those that could affect the outcome of the suit under governing law.") (citation and quotations omitted).

As discussed above, UCMC provided evidence that Weeden's violation of its Pay Recording Policy was the reason for her termination. Weeden has not presented evidence from which a reasonable factfinder could conclude that her race or gender caused her termination. *See Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019) ("[plaintiff's] claim of race discrimination is supported only by speculation and conjecture, which is not enough to survive summary judgment.").

V.     **Alleged Video Evidence**

Weeden stresses the fact that she requested video evidence from UCMC and argues that the response she received from third party Iron Mountain shows there was video evidence that UCMC destroyed that would have helped her case. (Dkt. 78). First, however, this Court quashed her subpoena to Iron Mountain. (Dkt. 64). Second, Iron Mountain's response to Weeden does not demonstrate that UCMC destroyed evidence.[7] After the Court granted in limited part her motion to compel in January 2019 (Dkt. 58), UCMC complied and produced its preservation or retention policies covering video surveillance or entry-exit records from 2010-2011. Weeden does not dispute that UCMC complied with the Court's order. In addition, she did not seek further relief from the Court or a request for sanctions related to her claim that UCMC destroyed evidence. A court may draw a negative inference against a party when the party "intentionally destroys documents in bad faith." *Reed v. Freedom*

---

[7] Iron Mountain's representative wrote: "We have search [*sic*] both of the accounts associated with this name but found no active boxes or containers. All containers had been recalled by to the customer and never returned." (Dkt. 76-1 at 3).

16

*Mortg. Corp.*, 869 F.3d 543, 548 (7th Cir. 2017). There is no evidence that UCMC intentionally destroyed the video evidence in bad faith.

Following the hearing on UCMC's motion to quash (Dkt. 64), the Court's order stated that Weeden, in her summary judgment response, could explain why she needs discovery to respond to the motion. Rule 56(d) requires a "nonmovant [to] show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Weeden did not specifically identify the reasons she cannot oppose the summary judgment motion or what further evidence she needs, other than to argue that the video evidence remains missing. The record reflects that UCMC complied with its discovery obligations, responded to Weeden that it had no such video evidence, and that Weeden had sufficient time for discovery before UCMC moved for summary judgment. Therefore to the extent that Weeden requests additional discovery, the Court declines that request. *See Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015) ("District courts have broad discretion in directing pretrial discovery.").

## CONCLUSION

For the stated reasons, University of Chicago Medical Center's motion for summary judgment [49] is granted. The Clerk is directed to enter judgment and terminate the case.

17

E N T E R:

Dated: December 9, 2019

---
MARY M. ROWLAND
United States District Judge